UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Polywad, Inc.,                                       Civil No. 24-1282 (DWF/DJF)

                Plaintiff,

v.                                                 **MEMORANDUM OPINION AND ORDER**

Federal Cartridge Company and Vista
Outdoor Inc.,

                Defendants.

## INTRODUCTION

This matter is before the Court on Defendants Federal Cartridge Company ("Federal") and Vista Outdoor Inc.'s ("Vista") motion to dismiss Plaintiff Polywad, Inc.'s ("Polywad") first amended complaint. (Doc. No. 44.) Plaintiff opposes the motion. (Doc. No. 51.) For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Polywad is a Georgia corporation that designs ammunition and provides consultation services to other manufacturing companies. (Doc. No. 22 ("Am. Compl.") ¶¶ 3, 29.) Vista is a Delaware corporation that owns or otherwise controls Federal, a Minnesota corporation in the business of selling ammunition. (*Id.* ¶¶ 4, 9, 13, 14.) Polywad and Defendants worked together on three separate projects over the course of twenty years, the third of which is at issue in this case. (*Id.* ¶ 33.)

The third project involved the creation of an "Auto-Segmenting Spherical Projectile" ("Auto-Segmenting project"). (*Id.* ¶ 46, 83.) The Auto-Segmenting project

began in August 2015 when Polywad and Federal signed a five-year non-disclosure agreement ("NDA"). (*Id.* ¶ 47.) The NDA prohibited the public disclosure of certain information shared between the parties for the purposes of the Auto-Segmenting project but did not contain any information about compensating Polywad for its contributions to any future product. (*Id.*; Am. Compl., Ex. F at 1-2.) However, the NDA contained the phrases "Each Party shall perform its respective obligations hereunder without charge to the other," and "nothing in this agreement shall be understood as requiring the Parties to enter into any subsequent agreements or to require either Party to purchase . . . services." (Am. Compl., Ex. F at 2.) Polywad was not concerned about the lack of a compensation agreement at the beginning of the Auto-Segmenting project because of the twenty-year working relationship it had with Defendants and a prior project where the compensation agreement was signed much later, just before sales began on the resulting product. (Am. Compl. ¶ 94.)

Over the course of the Auto-Segmenting project, Polywad provided various designs and tools. (*Id.* ¶¶ 46, 83.) Throughout the work, Defendants promised Polywad that it would be compensated for any benefits conferred on them, although the parties never reached a specific agreement. (*Id.* ¶ 63, 64, 71, 73, 93.) During an October 17, 2016 meeting, Federal confirmed that a previous royalty agreement between the parties would serve as a model for the royalty agreement for the Auto-Segmenting project. (*Id.* ¶ 73.) Polywad continued its attempts to reach a compensation agreement with Defendants beyond that meeting, including communications in the last quarter of 2019 and the first quarter of 2020. (*Id.* ¶ 95.) After that time, it became apparent to Polywad

that this promise would not be fulfilled. (*Id.* ¶ 95.) Federal went on to create multiple products from its work with Polywad and received many awards for those products. (*Id.* ¶¶ 101-06.)

Polywad now sues Defendants to resolve the compensation matter. (*Id.*) Relevant to this motion Polywad brings five claims against Defendants: (1) unjust enrichment; (2) quantum meruit; (3) breach of implied promise topay for services under Ga. Code Ann. § 9-2-7; (4) promissory estoppel/violation of Ga. Code Ann. § 13-3-44; and (5) attorney's fees against defendants under Ga. Code Ann. § 13-3-44. (*Id.* ¶¶ 108–151.) Defendants move to dismiss these claims.

## DISCUSSION

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Defendants move to dismiss the first amended complaint based on three grounds: (1) the claims are time-barred by the statute of limitations; (2) the NDA between the parties precludes Polywad's request for quasi-contract remedies; and (3) the Patent Act preempts Polywad's state-law claims. (Doc. No. 46.) The Court addresses each of these arguments below.[1]

---

[1] Defendants argue that Minnesota law should apply to this dispute because the NDA includes a choice-of-law provision selecting Minnesota law. (Doc. No. 46 at 4-5.) Because the Court finds below that the NDA does not govern this dispute, the Court is not required to apply Minnesota law outside of its interpretation of the NDA itself. The Court applies Georgia law on state law matters throughout the remainder of this opinion. The Court declines to make a final choice of law determination because the parties did not fully brief choice of law and the result would be the same regardless of which law applies.

I.    **Statute of Limitations**

Defendants argue that Polywad's claims are barred by the statute of limitations. Under Georgia law,[2] unjust enrichment, quantum meruit, breach of implied promise to pay for services, and promissory estoppel are subject to a four-year statute of limitations. Ga. Code Ann. § 9-3-26; *see Thierry v. Honey Pot Co., LLC*, No. 23-12083, 2024 WL 3983400, at *5 (11th Cir. Aug. 29, 2024); *Cont'l Cas. Co. v. Healthprime, Inc.*, No. 07-cv-2512, 2008 WL 11322920, at *3 (N.D. Ga. Dec. 15, 2008). The parties agree that this is the applicable statute of limitations in Georgia but disagree about when the clock began to run. Defendants assert that Polywad could have brought its claims by at least January 2017. (Doc. No. 46 at 11.) Polywad contends that the earliest it could have brought its claims was Fall 2020. (Doc. No. 51 at 3.)

The accrual date for equitable contract claims "'is the time when the plaintiff could first have maintained his action to a successful result,' not necessarily at the time that the benefits were conferred." *Thierry*, 2024 WL 3983400, at *6 (quoting *Renee Unlimited, Inc. v. City of Atlanta*, 687 S.E.2d 233, 238 (Ga. Ct. App. 2009)). Typically, there must be some additional fact that would inform the plaintiff that the defendant will

---

[2]    As noted previously, the Court applies Georgia law at this stage, but the result would be the same under Minnesota law. Under Minnesota law, breach of contract, promissory estoppel, unjust enrichment, and other contract-related claims are subject to a six-year statute of limitations. *Jacobson v. Bd. of Trs. of the Tchrs. Ret. Ass'n*, 627 N.W.2d 106, 10 (Minn. Ct. App. 2001) (citing Minn. Stat. § 541.05). "A cause of action accrues and the statute of limitations begins to run when the cause of action will survive a motion to dismiss for failure to state a claim upon which relief can be granted." *Hermann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn. 1999). This is rule is very similar to Georgia's accrual rule.

5

not honor their promise. For example, in *Engram v. Engram*, a woman rented a house from her ex-husband who had orally offered her an option to purchase the house in the future and apply her rent payments to the purchase price. *Engram v. Engram*, 463 S.E.2d 12, 13 (Ga. 1995). In 1984, the woman made improvements to the house, and in 1993, the husband refused to honor her option-to-purchase. *Id.* at 14. The parties disagreed about which date was the accrual date. *Id.* at 15. The Georgia Supreme Court held that the woman's action did not accrue until 1993 because she could not have known that she had an unjust enrichment claim until her ex-husband refused to honor the option to purchase. *Id.* Similarly, in *Kiroff v. Jurkuta*, a district court found that the date of accrual for a promissory estoppel claim was not when the oral promise was made to the plaintiff, but instead when the plaintiff found out in writing that the promise was not to be honored. *Kiroff v. Jurkuta*, No. 08-cv-2837, 2009 WL 10672145, at *8 (N.D. Ga. Aug. 17, 2009).

 Here, Polywad alleges that discussions between the parties about compensation continued into the first quarter of 2020. Polywad alleges that after these efforts failed it became apparent that Federal would not fulfill its promise to compensate it. Polywad would not have known that it had an action under any of these equitable theories against Defendants until it became aware of Federal's intent not to compensate Polywad. Given the history between the parties, there is no reason Polywad should have been concerned about reaching an agreement on compensation until just before the resulting product was put on the market or Federal made it clear that it would not honor its promise. Accordingly, at the earliest, accrual began sometime in 2020 when compensation

discussions failed.³  Polywad filed its first complaint on November 14, 2023.  (Doc. No. 1.)  This date is within four years of any date in 2020, so Polywad's claims are not barred by the statute of limitations.

## II.     Contract Claims

Next, Defendants argue that the NDA between the parties precludes Polywad's claims for quasi-contract, or equitable, remedies including unjust enrichment, quantum meruit, and promissory estoppel.  (Doc. No. 46 at 11.)  Indeed, "[i]t is axiomatic that equitable relief is only available where there is no adequate remedy at law."  *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir. 1994); *see also Drobnak v. Andersen Corp.*, 561 F.3d 778, 787 (8th Cir. 2009) ("Equitable remedies are available only when no adequate legal remedy exists.").  The question here is whether an adequate legal remedy exists.  When a claim arises out of the performance of a contract, there is an adequate remedy at law.  *Clark v. R&R Atlanta, LLC*, No. 19-cv-384, 2019 WL 13292987, at *2 (N.D. Ga. Aug. 8, 2019).  However, when a dispute does not arise from the contract's express terms, equitable remedies are still available.  *See Howell v. Phx. Life. Ins. Co.*, No. 07-cv-14, 2009 WL 10669623, at *3 (N.D. Ga. Aug. 20, 2009); *Wingate Land Dev., LLC v. Robert C. Walker, Inc.*, 558 S.E.2d 13, 16 (Ga. Ct. App.

---

³       The Court declines to specify the exact date of accrual because that was not fully briefed by the parties and it is unnecessary because these claims would not be barred, regardless of the specific date.

2001). Thus, the more precise question is whether the NDA governs this compensation dispute, precluding any quasi-contract remedies.[4]

Under Minnesota law, "the primary goal of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). A "court must consider the overall purpose of the contract, as well as its terms." *Advantage Consulting Grp., Ltd. v. ADT Sec. Sys., Inc.*, 306 F.3d 582, 585 (8th Cir. 2002) (citing *Clapp v. Haferman Water Conditioning, Inc.*, 380 N.W.2d 838, 841 (Minn. Ct. App. 1986)). "If 'the parties express their intent in unambiguous words,' then a court must give the words 'their plain and ordinary meaning' in accordance with the contract's obvious overall purpose." *Steffen v. Northway Res. Dev., LLC*, 581 F. Supp. 3d 1138, 1143 (D. Minn. 2022) (quoting *Motorsports Racing Plus*, 666 N.W.2d at 323-24). Generally, a non-disclosure agreement would not cover compensation issues outside of the non-disclosure of information. *See, e.g.*, *Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc.*, 304 F. Supp. 3d 815, 818-19, 824-27 (D. Minn. 2018) (analyzing compensation-related quasi-contract claims and breach of non-disclosure agreement claims separately).

---

[4]     The NDA contains a choice-of-law provision that states: "This Agreement and any dispute arising out of or relating to this Agreement or the relationship between the Parties ("Dispute") shall be . . . governed by and construed in accordance with the laws of the State of Minnesota, without regard to conflicts of law rules." (Am. Compl., Ex. F at 2.) While the Court concludes that the NDA, and thus its choice-of-law provision, does not govern this compensation dispute, the Court honors this provision in its analysis of the NDA's scope and applicability. *See Surgidev Corp. v. Eye Tech., Inc.*, 648 F. Supp. 661, 679 (D. Minn. 1986).

Here, the parties' NDA governs the "exchanging and disclosing [of] certain information and ideas relative to small arm ammunition." (Am. Compl., Ex. F at 1.) The NDA contains further terms to govern information disclosures including the definition of proprietary information, exclusions, the expiration of the NDA, and more. (*Id.* at 1-2.) The NDA does not contain information about future compensation for products created through the parties' relationship. It contains the phrases "[e]ach Party shall perform its respective obligations hereunder without charge to the other," and "nothing in this agreement shall be understood as requiring the Parties to enter into any subsequent agreements or to require either Party to purchase . . . services." (*Id.* at 2.) Construing the first statement in the light most favorable to the complainant, the Court understands it to mean that the parties were not required to compensate each other for the non-disclosure of information protected under the agreement. This term does not include anything related to compensation on any product resulting from the Auto-Segmenting project. As for the second phrase, this kind of statement does not prohibit future compensation or royalty agreements between the parties. Defendants could enter into a subsequent agreement with Polywad if they wanted to, and Polywad's allegations indicate that Defendants exhibited a desire to enter into such an agreement. A clause preventing the requirement of future contracts does not shield a defendant from liability under a quasi-contract theory if it engaged in behavior that warrants the award of such a remedy.

The NDA only covers the non-disclosure of information, it does not touch the parties' future negotiations around compensation for resulting products. Therefore, the NDA does not cover the dispute in this case and does not bar Polywad's equitable claims.

### III. Patent Act Preemption

Lastly, Defendants argue that Polywad's state law claims are preempted by the Patent Act. "States may not offer patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989). Contract claims are traditionally left to the states, but they may be preempted by federal patent law if the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979) (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 479 (1974)); *cf. Badhwa v. Veritec, Inc.*, 367 F. Supp. 3d 890, 903 n.7 (D. Minn. 2018) ("But there is no reason to find that federal patent law completely preempts any state law claims, including one for unjust enrichment."). In *Aronson v. Quick Point Pencil Co.*, the United States Supreme Court answered the preemption question by considering the three purposes of the federal patent system: (1) "to foster and reward invention"; (2) "to stimulate further innovation [through disclosure of inventions] and to permit the public to practice the invention once the patent expires"; and (3) "to assure that ideas in the public domain remain there for the free use of the public." *Aronson*, 440 U.S. at 262-63. Further, the Federal Circuit has held that unjust enrichment claims for "incremental benefits" are not preempted by federal patent law. *See Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1380 (Fed. Cir. 2005); *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1308 (Fed. Cir. 2003).

In *University of Colorado Foundation, Inc. v. American Cyanamid Co.*, two professors wrote their ideas to reformulate a prenatal vitamin in a confidential manuscript and shared it with a company. *Am. Cyanamid Co.*, 342 F.3d at 1302-03. The company subsequently used the professors' confidential ideas to obtain a patent. *Id.* at 1303. The professors sued for unjust enrichment, along with other claims. *Id.* The Federal Circuit found that the unjust enrichment claim was not preempted by federal patent law. *Id.* at 1308. Following the *Aronson* analysis, the Court found that the professors' claims did not frustrate any of the three purposes of federal patent law. *Id.* at 1306-07. Specifically, allowing the professors to collect their incremental benefit fostered incentives to invent, stimulated further innovation, and had no impact on information in the public domain. *Id.* at 1307. The claim did not prevent the public from using ideas or "withdraw ideas from the public domain." *Id.* Moreover, the Court emphasized that the unjust enrichment claim aimed only to determine rights as between the parties and not the rights of the parties against the world. *Id.* Lastly, the Court highlighted that the remedy awarded by the district court had been limited to incremental benefits, not a total benefit. *Id.*

In *Ultra-Precision Manufacturing v. Ford Motor Co.*, the Federal Circuit conducted a similar analysis, but came to the opposite conclusion, finding that federal patent law preempted the unjust enrichment claim. *Ultra-Precision*, 411 F.3d at 1380. In that case, Ford was working to reduce excessive noise, vibration, and harshness in an air conditioner compressor. *Id.* at 1371. Ultra-Precision worked with Ford on this problem, eventually patenting a design. *Id.* at 1372-73. Later, Ultra-Precision saw changes Ford

11

made to one of its compressors and believed it was using Ultra-Precision's design without compensation, so it sued for unjust enrichment, among other claims. *Id.* at 1374. The Federal Circuit found that Ultra-Precision sought "a royalty-like award, premised on Ford's savings from using Ultra-Precision's technical information after Ultra-Precision made the discovery available to the public." *Id.* at 1380. This was different from cases like *American Cyanamid* because Ultra-Precision sought a remedy "over and above the benefit the general public received when [it] published its information in its issued patents." *Id.* Importantly, Ultra-Precision had been given the opportunity by the district court to amend its complaint to comply by instead seeking any incremental benefit Ford received from their work together, but it did not do so. *Id.* at 1375, 1380. In *Thompson v. Microsoft*, the Federal Circuit restated its reasoning in *Ultra-Precision*, writing "we noted that the appellant's complaint did not plead that the appellee received any incremental benefit over and above the benefit the general public received from ideas that had been placed in the public domain." *Thompson v. Microsoft Corp.*, 471 F.3d 1288, 1290 (Fed. Cir. 2006).

Here, Polywad asserts several quasi-contract claims, one of which is unjust enrichment. None of Polywad's claims are preempted by federal patent law, including the unjust enrichment claim. First, Polywad's claims do not frustrate the purposes of federal patent law. Polywad's claims, like the claim in *American Cyanamid*, support invention by encouraging inventors to work together in the creation of new technology. It does not inhibit the patent process. Polywad is seeking compensation for its work, without which inventors may not be encouraged to go out into the marketplace and work

12

with others. Likewise, Polywad's claims do not frustrate the goal of stimulating further innovation. Polywad is seeking retroactive relief of compensation for its contributions. Seeking a royalty-like form of compensation, as it received in the past, does not change the analysis. Allowing inventors compensation remedies for their labor does not interfere with federal patent law. Lastly, this case has no bearing on whether ideas related to the resulting products remain in the public domain. This case does not adjudicate the rights of third parties. Rather, Polywad is asking the Court to adjudicate only the rights between itself and Defendants. In sum, Polywad's claims do not frustrate any of the three purposes of federal patent law.

Additionally, Polywad is asking for an incremental benefit, not a total benefit. This was the primary issue in *Ultra-Precision*, which Defendants rely on. In fact, Ultra-Precision was given an opportunity to amend its complaint to state that it was only seeking an incremental benefit, but it did not. Here, Polywad does not claim that it is entitled to the entire benefit of the resulting products. Instead, Polywad seeks the incremental benefit from its contribution to the development of the resulting products, based on alleged promises made by Defendants as to compensation. This case does not share that key fact of *Ultra-Precision*. The form of compensation itself is not dispositive. While Polywad sought a royalty-like agreement, similar to the previous compensation agreement, Polywad does not claim a total benefit.

After considering the purposes of federal patent law and other key characteristics emphasized by the Federal Circuit, Polywad's quasi-contract claims are not preempted by federal patent law. Contract claims are typically left to the states and may touch the

realm of intellectual property. The important question is whether such claims frustrate the purposes of federal patent law. Here, Polywad's claims do not do so.

In conclusion, Defendants' three arguments for dismissal under Rule 12(b)(6) fail.[5] Therefore, the motion to dismiss is denied.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss (Doc. No. [44]) is **DENIED**.

Dated: October 7, 2024               s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     United States District Judge

---

[5] Relying on the dismissal of Counts 1 through 4, Defendants also argue that Polywad is not entitled to the attorney's fees claimed in Count 5 of the first amended complaint. (Doc. No. 46 at 18-19.) Upon finding that Polywad's other claims survive the motion to dismiss, this argument is moot. *See Collins v. Athens Orthopedic Clinic*, 849 S.E.2d 213, 218-19 (Ga. Ct. App. 2020) (finding that it was error to dismiss a claim under Georgia Code § 13-6-11 when the underlying claims could proceed).